UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ronald Lawrence Phillips,

    Plaintiff,

v.                                MEMORANDUM OPINION
                                  AND ORDER
                                  Civil No. 10-4442

Fairview Health Services,

    Defendant.

_____

    Daniel E. Gustafson and Joshua J. Rissman, Gustafson Gluek PLLC, Counsel for Plaintiff.

    Kelly A. Putney and Ellie S. Khabazian, Bassford Remele, a Professional Association, Counsel for Defendant.

_____

This matter is before the Court on Defendant Fairview Health Services' ("Fairview") motion for dismissal pursuant to Minn. Stat. § 145.682 and/or judgment on the pleadings.

I.    **Factual Background**

This action arises out of alleged injuries Plaintiff incurred while being admitted to one of Fairview's hospitals, Fairview Riverside Hospital. In his Amended Complaint, Plaintiff alleges that he suffers from severe mental illness,

including depression, obsessive compulsive disorder and schizophrenia. (Amended Complaint ¶ 6.) On or about June 11, 2010, Plaintiff called the hospital's information line, seeking psychiatric treatment. (Id. ¶ 7.) He was told to seek treatment at Fairview Riverside. (Id.) Plaintiff went to Fairview Riverside, where he was directed to the psychiatric care department. (Id. ¶ 8.) Thereafter, Plaintiff was directed to an examining room. A male nurse (Attendant 1) entered the exam room, who was aware of Plaintiff's fragile mental state. (Id. ¶ 10.) Knowing Plaintiff's mental state, Attendant 1 was nonetheless abusive and belittling toward Plaintiff, telling Plaintiff he would be locked up and forced to take drugs because his suicidal state. (Id. ¶ 11 ©.) Because Plaintiff felt threatened, Plaintiff changed his position and stated he was not suicidal. (Id. ¶ 11 (d).) Attendant 1 responded "What? Do you think this is some kind of game?" (Id. ¶ 11 (e).) Plaintiff responded by criticizing Attendant 1's questioning technique. (Id. ¶ 11 (f).)

Attendant 1 then snapped his fingers and yelled for Security. (Id. ¶ 12.) Two security guards came and escorted Plaintiff into a detention room. (Id. ¶ 13.) Plaintiff was then told to lie on a mat. (Id.) The room was unclean and had no furniture. (Id.)

Plaintiff alleges that later, one of the security guards told Plaintiff that Attendant 1 wanted to apologize for his behavior and stated he had no reason to treat Plaintiff in that manner. (Id. ¶ 14.) Plaintiff responded that it was too late for apologies. (Id.) A security guard remained outside of the detention room. (Id. ¶ 15.)

Plaintiff alleges that his mental condition then became worse. (Id. ¶ 17.) Because of Attendant 1's actions, Plaintiff was denied the psychiatric services he sought because of his mental disability. (Id. ¶¶ 18 and 19.)

Another male nurse later entered the detention room (Attendant 2) for the purpose of drawing blood from Plaintiff. (Id. ¶ 21.) Plaintiff requested a female caregiver, as he did not want Attendant 2 drawing his blood. (Id. ¶ 22.) In response, Attendant 2 laughed and ridiculed Plaintiff's request. (Id. ¶ 23.) Attendant 2 then began repeatedly sticking Plaintiff with a needle in his attempt to draw blood. (Id. ¶ 24.) Attendant 2 claimed that the repeated sticks with the needle were necessary because he could not find a vein. (Id.) Plaintiff alleges that he has had his blood drawn on previous occasions and that he was told he had large veins that were easy to find. (Id. ¶ 25.)

Plaintiff alleges that Attendant 2 stuck him numerous times intentionally because of Plaintiff's request for a female caregiver and because of his mental disability. (Id. ¶ 26.) The multiple needle sticks caused Plaintiff to suffer a three to four inch hematoma. (Id. ¶ 29.) Plaintiff sought treatment for the hematoma, but was denied such treatment. (Id.)

Plaintiff has asserted four causes of action in his Amended Complaint: Count I, violation of 29 U.S.C. § 794 (Rehabilitation Act); Count II, intentional infliction of emotional distress; Count III, False Imprisonment; Count IV, Battery.

## II.  Standard for Dismissal under Minn. Stat. § 145.682

Pursuant to Minnesota law, "[i]n an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case" the plaintiff must serve the defendant, with the summons and complaint, an affidavit from his attorney stating that the facts have been reviewed by said attorney with an expert, and that it is the expert's opinion that one or more of the defendants deviated from the applicable standard of care, which caused plaintiff injury. Minn. Stat. § 145.682, subd. 2 and 3 (a). If a plaintiff fails to provide an affidavit of expert review within sixty days

after demand, the defendant is entitled to mandatory dismissal with prejudice.

Id. subd. 6.

> [E]xpert testimony is generally required to establish the standard of care and the departure from that standard for the conduct of physicians. "The purpose of expert testimony is to interpret the facts and connect the facts to conduct which constitutes [medical] malpractice and causation." This is based on the assumption that most medical malpractice cases involve complex issues of science or technology, requiring expert testimony to assist the jury in determining liability.

Tousignant v. St. Louis County, 615 N.W.2d 53, 58 (Minn. 2000) (quoting Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188,192 (Minn. 1990). The exception to the expert requirement involves "acts or omissions complained of [that] are within the general knowledge and experience of lay persons." Id.

Fairview argues that the claims of battery, false imprisonment, intentional infliction of emotional distress and violation of the Rehabilitation Act all require expert testimony to establish a prima facie case. The alleged maltreatment arises out of the provision of medical services provided by Fairview employees. Specifically, Fairview's medical judgment to place Plaintiff on patient watch after he admitted he was suicidal and not allow him to leave the hospital until he was evaluated by a physician, and the drawing of blood. Fairview argues that the medical judgment was related to the supervision and monitoring of a mental

health patient, and that such judgment requires expert testimony as a lay person is not qualified to decide whether such judgment was proper under the circumstances.

Fairview further argues the battery claim, which arises out of the blood draw, similarly requires expert testimony.  When consent for a medical procedure is given, and Plaintiff concedes he consented to having his blood drawn, no claim for battery can exist unless the actual procedure performed is "of a substantially different nature and character from that to which" consent has been given.  Kohoutek v. Hafner, 383 N.W.2d 295, 299 (Minn. 1986).  To establish that the manner in which Plaintiff's blood was drawn was inconsistent with the standard of care, Plaintiff needs to provide expert testimony.

Fairview asserts that Plaintiff has not submitted the required affidavit, and that a demand was made for such an affidavit on April 22, 2011.  Fairview thus asks that the Amended Complaint be dismissed with prejudice.

Plaintiff argues that the plain language of Minn. Stat. § 145.682 does not apply here because Plaintiff is not asserting any malpractice claims, rather he is asserting intentional tort and statutory claims.  Plaintiff further argues that the mere fact that a hospital or psychiatrist is being sued does not transform his

claim to one of medical malpractice. Finally, Plaintiff argues that an expert affidavit is not necessary in this case because the claims do not involve complex scientific or technological issues.

The Court finds that based on the facts as alleged in the Amended Complaint and the claims asserted therein, an affidavit pursuant to Minn. Stat. § 145.682 was necessary for this case to proceed. Plaintiff alleges that he went to Fairview on the day in question because of his mental illness and his suicidal thoughts. It is clear from the allegations that the alleged mistreatment by two Attendants relates to their professional duties in providing medical services to Plaintiff in response to Plaintiff's reports of his mental illness and suicidal thoughts. While Plaintiff argues that the Attendants intended to harm him, to succeed on such claims, he must first show the care he received was medically inappropriate. For example, to show that Fairview's decision to place him on a patient watch[1] constituted false imprisonment or intentional infliction of

---

[1] In support of this motion to dismiss, Fairview submitted the emergency room records which indicate Plaintiff was placed on a patient watch. [Doc. No. 44, Exs. A and B] Plaintiff asks the Court not to consider these documents on a motion to dismiss. However, documents necessarily embraced by the Complaint are not matters outside of the pleadings. Enervations, Inc. v. Minn. Mining and Mfg., Co., 380 F.3d 1066, 1069 (8th Cir. 2004). Because the emergency room records generated at the time of Plaintiff's emergency room visit are necessarily embraced by the allegations in the Complaint, the Court can properly consider these documents in ruling on Fairview's motion to dismiss.

emotional distress, Plaintiff must show such conduct did not comply with the applicable standard of care. To meet this burden, Plaintiff must present expert testimony as to the applicable standard of care. See <u>Gorokhova v. Kirshbaum</u>, No. A05-2549, 2006 WL 3490799 (Minn. Ct. App. Dec. 5, 2006).

In <u>Kanter v. Met. Med. Ctr</u>, the Minnesota Court of Appeals held that an expert was necessary to determine whether a psychiatric nurse complied with the appropriate standard of care when the nurse left a psychiatric patient alone for a few minutes in a bathtub, and the patient drowned. 384 N.W.2d 914, 916 (Minn. Ct. App. 1986).

> In a psychiatric ward the potential tendencies of patients suffering from mental illness are not so easily determined by one without special training and knowledge. Even though the deceased was once found lying in the (empty) bathtub several weeks before her death, there is nothing in the record to indicate that she had suicidal tendencies. The advantage of an expert's testimony in this case would be to assist the jury in understanding the nature of the patient's mental illness, whether suicidal tendencies are associated with the patient's specific illness, and finally, given the patient's history, whether the patient may have given notice that she would act on those tendencies. Jury guesswork is to be discouraged if the use of expert testimony can assist the jury in determining these essential facts.

<u>Id.</u>

More recently in <u>C.C. v. Fairview Health Services</u>, the Minnesota Court of Appeals affirmed a district court ruling that required the plaintiff to present an

expert affidavit to support her claims against the defendant arising from an alleged sexual assault while she was locked in a behavioral-heath unit. No. A09-2320, 2010 WL 300603 (Minn. Ct. App. Aug. 3, 2010). The plaintiff had argued that her case involved the safety and security of patients, not actual medical treatment. Id. at *1. In rejecting that argument, the court held that "decisions regarding patient admission, monitoring, supervision, and security implicate medical judgment." Id. at *2. The court further held the exception to Minn. Stat. § 145.682 did not apply, as the plaintiff had not shown that the care and supervision of psychiatric patients is within the general knowledge of lay persons. Id. at *4.

Because an expert opinion is required to determine whether the Fairview Attendants' care and treatment of Plaintiff, a mentally ill individual, was medically appropriate under the circumstances, Plaintiff's failure to submit such an affidavit within sixty days of Fairview's demand requires that this matter be dismissed with prejudice. Minn. Stat. § 145.682, subd. 6.

IT IS HEREBY ORDERED that Defendant Fairview Health Services' Motion to Dismiss [Doc. No. 32] is GRANTED. This matter is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: December 12, 2011

                                          s/ Michael J. Davis
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court

Civil No. 10-4442